
**EJCDC**
ENGINEERS JOINT CONTRACT
DOCUMENTS COMMITTEE

# DESIGN-BUILD PAYMENT BOND

**DESIGN-BUILDER** *(name and address):*
Coastal Bridge Company, LLC
P.O. Box 14715
Baton Rouge, LA 70898

**SURETY** *(name and address of principal place of business):*
Nationwide Mutual Insurance Company
One West Nationwide Boulevard,
Columbus, OH 43215-2220

**OWNER** *(name and address):* FG LA, LLC
301 Main Street, Suite 200, Baton Rouge, LA 70801

**DESIGN-BUILD CONTRACT**
Effective Date of the Contract: 8/6/2019
Amount: One Million, One Hundred and Eighty Three Thousand and No/100 ($1,183,000.00)
Description *(name and location):* Contract No. F4MS-FGLA-30-K006 - Phase 1:Engineering Design Only: New Vehicular Bridge - Sunshine Project UPRR Bridge - EPC, St James Parish, Louisiana

**BOND**
Bond Number: SNN4009205
Date *(not earlier than the Effective Date of the Contract):*
Amount: One Million, One Hundred and Eighty Three Thousand and No/100 ($1,183,000.00)
Modifications to this Bond Form: ☐ None  ☑ See Paragraph 18

Surety and Design-Builder, intending to be legally bound hereby, subject to the terms set forth below, do each cause this Payment Bond to be duly executed by an authorized officer, agent, or representative. *[Note: Provide supplemental execution by any additional parties, such as joint venturers.]*

**DESIGN-BUILDER AS PRINCIPAL**

Coastal Bridge Company, LLC
Design-Builder's Name
By: *[Signature]*
Signature

Devon Overall
Print Name

Vice President - Marine/Structures Division
Title
Attest: *[Signature]*
Signature

Michael Giambrone - Chief Financial Officer
Title

**SURETY**

Nationwide Mutual Insurance Company
Surety's Name
By: *[Signature]*
Signature *(attach power of attorney)*

Fiona J. Boyd
Print Name

Attorney-in-Fact
Title
Attest: *[Signature]*
Signature

Myra L. Aupied - Agent
Title

(AT022318.3)EJCDC® D-615, Design-Build Payment Bond.
Copyright © 2016 National Society of Professional Engineers, American Council of Engineering Companies,
and American Society of Civil Engineers. All rights reserved.    1 of 4

**EXHIBIT B**

1. The Design-Builder and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors, and assigns to the Owner to pay for labor, services, materials, and equipment furnished for use in the performance of the Design-Build Contract, which is incorporated herein by reference, subject to the following terms.

2. If the Design-Builder promptly makes payment of all sums due to Claimants, and defends, indemnifies, and holds harmless the Owner from claims, demands, liens, or suits by any person or entity seeking payment for labor, services, materials, or equipment furnished for use in the performance of the Design-Build Contract, then the Surety and the Design-Builder shall have no obligation under this Bond.

3. If there is no Owner Default under the Design-Build Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Design-Builder and the Surety (at the address described in Paragraph 13) of claims, demands, liens, or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, services, materials, or equipment furnished for use in the performance of the Design-Build Contract, and tendered defense of such claims, demands, liens, or suits to the Design-Builder and the Surety.

4. When the Owner has satisfied the conditions in Paragraph 3, the Surety shall promptly and at the Surety's expense defend, indemnify, and hold harmless the Owner against a duly tendered claim, demand, lien, or suit.

5. The Surety's obligations to a Claimant under this Bond shall arise after the following:

   5.1 Claimants that do not have a direct contract with the Design-Builder,

      5.1.1 have furnished a written notice of non-payment to the Design-Builder, stating with substantial accuracy the amount claimed and the name of the party to which the materials were, or equipment was, furnished or supplied, or for which the labor was done or performed, within ninety (90) days after having last performed labor or services, or last furnished materials or equipment included in the Claim; and

      5.1.2 have sent a Claim to the Surety (at the address described in Paragraph 13).

   5.2 Claimants who are employed by or have a direct contract with the Design-Builder have sent a Claim to the Surety (at the address described in Paragraph 13).

6. If a notice of non-payment required by Paragraph 5.1.1 is given by the Owner to the Design-Builder, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Paragraph 5.1.1.

7. When a Claimant has satisfied the conditions of Paragraph 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

   7.1 Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

   7.2 Pay or arrange for payment of any undisputed amounts.

   7.3 The Surety's failure to discharge its obligations under Paragraph 7.1 or 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Design-Builder may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Paragraph 7.1 or 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

8. The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Paragraph 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

9. Amounts owed by the Owner to the Design-Builder under the Design-Build Contract shall be used for the performance of the Design-Build Contract and to satisfy claims, if any, under any design-build performance bond. By the Design-Builder furnishing and the Owner accepting this Bond, they agree that all funds earned by the Design-Builder in the performance of the Design-Build Contract are dedicated to satisfy obligations of the Design-Builder and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

10. The Surety shall not be liable to the Owner, Claimants, or others for obligations of the Design-Builder that are unrelated to the Design-Build Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to or give notice on behalf of Claimants, or otherwise have any obligations to Claimants under this Bond.

11. The Surety hereby waives notice of any change, including changes of time, to the Design-Build Contract or to related subcontracts, purchase orders, and other obligations.

12. No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction where the construction portion of the Project is located, or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Paragraph 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Design-Build Contract, whichever of (1) or (2) first occurs. If the provisions of this paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

13. Notice and Claims to the Surety, the Owner, or the Design-Builder shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

14. When this Bond has been furnished to comply with a statutory or other legal requirement where the construction portion of the Project is located, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted from this Bond and provisions conforming to such statutory or other legal requirement shall be deemed incorporated here. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

15. Upon requests by any person or entity appearing to be a potential beneficiary of this Bond, the Design-Builder and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

16. Definitions

   16.1 Claim: A written statement by the Claimant including at a minimum:

   1. The name of the Claimant;
   2. The name of the individual or entity for which the labor or services were done, or materials or equipment furnished;
   3. A copy of the agreement or purchase order pursuant to which labor, services, materials, or equipment were furnished for use in the performance of the Design-Build Contract;
   4. A brief description of the labor, services, materials, or equipment furnished;
   5. The date on which the Claimant last performed labor or services, or last furnished materials or equipment, for use in the performance of the Design-Build Contract;
   6. The total amount earned by the Claimant for labor, services, materials, or equipment furnished as of the date of the Claim;

7. The total amount of previous payments received by the Claimant; and
8. The total amount due and unpaid to the Claimant for labor, services, materials, or equipment furnished as of the date of the Claim.

16.2 **Claimant:** An individual or entity having a direct contract with the Design-Builder or with a subcontractor of the Design-Builder to furnish labor, services, materials, or equipment for use in the performance of the Design-Build Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, services, materials, or equipment" that part of the water, gas, power, light, heat, oil, gasoline, telephone service, or rental equipment used in the Design-Build Contract, architectural and engineering services required for performance of the work of the Design-Builder and the Design-Builder's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials, or equipment were furnished.

16.3 **Design-Build Contract:** The agreement between the Owner and Design-Builder identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

16.4 **Owner Default:** Failure of the Owner, which has not been remedied or waived, to pay the Design-Builder as required under the Design-Build Contract, or to perform and complete or comply with the other material terms of the Design-Build Contract.

16.5 **Contract Documents:** All the documents that comprise the agreement between the Owner and Design-Builder.

17. Any singular reference to Design-Builder, Surety, Owner, or other party shall be considered plural where applicable.

18. Modifications to this Bond are as follows:

*Whereas Obligee has agreed to modify requirements under Part III, Standard General Conditions, Article 6.01, Performance, Payment, and Other Bonds of the Contract, it is understood and agreed that by acceptance of this Bond, Obligee acknowledges and accepts the obligations hereunder are strictly and expressly limited to payment activities detailed in Contract Part 1, Scope of Work, Article 3.3, Engineering Services.*

*Any modifications to this bond form or the penal sum of this bond requires a Consent of Surety accompanied by a Power of Attorney.*

{AT022318.3}EJCDC® D-615, Design-Build Payment Bond.
Copyright © 2016 National Society of Professional Engineers, American Council of Engineering Companies, and American Society of Civil Engineers. All rights reserved.   4 of 4

1056456

# Power of Attorney

KNOW ALL MEN BY THESE PRESENTS THAT:

Nationwide Mutual Insurance Company, an Ohio corporation hereinafter referred to as the "Company" and does hereby make, constitute and appoint:

### Randolph A. Brunson, Fiona J. Boyd, Myra L. Aupied, Asa J. Brunson

each in their individual capacity, its true and lawful attorney-in-fact, with full power and authority to sign, seal, and execute on its behalf any and all bonds and undertakings, and other obligatory instruments of similar nature, in penalties not exceeding the sum of

### Unlimited

and to bind the Company thereby, as fully and to the same extent as if such instruments were signed by the duly authorized officers of the Company; and all acts of said Attorney pursuant to the authority given are hereby ratified and confirmed.

This power of attorney is made and executed pursuant to and by authority of the following resolution duly adopted by the board of directors of the Company:

"RESOLVED, that the president, or any vice president be, and each hereby is, authorized and empowered to appoint attorneys-in-fact of the Company, and to authorize them to execute and deliver on behalf of the Company any and all bonds, forms, applications, memorandums, undertakings, recognizances, transfers, contracts of indemnity, policies, contracts guaranteeing the fidelity of persons holding positions of public or private trust, and other writings obligatory in nature that the business of the Company may require; and to modify or revoke, with or without cause, any such appointment or authority; provided, however, that the authority granted hereby shall in no way limit the authority of other duly authorized agents to sign and countersign any of said documents on behalf of the Company."

"RESOLVED FURTHER, that such attorneys-in-fact shall have full power and authority to execute and deliver any and all such documents and to bind the Company subject to the terms and limitations of the power of attorney issued to them, and to affix the seal of the Company thereto; provided, however, that said seal shall not be necessary for the validity of any such documents."

This power of attorney is signed and sealed under and by the following bylaws duly adopted by the board of directors of the Company.

Execution of Instruments. Any vice president, any assistant secretary or any assistant treasurer shall have the power and authority to sign or attest all approved documents, instruments, contracts, or other papers in connection with the operation of the business of the company in addition to the chairman of the board, the chief executive officer, president, treasurer, or secretary; provided, however, the signature of any of them may be printed, engraved, or stamped on any approved document, contract, instrument, or other papers of the Company.

IN WITNESS WHEREOF, the Company has caused this instrument to be sealed and duly attested by the signature of its officer the 1st day of May, 2017.

Antonio C. Albanese, Vice President of Nationwide Mutual Insurance Company

### ACKNOWLEDGMENT

STATE OF NEW YORK, COUNTY OF NEW YORK: ss
On this 1st day of May, 2017, before me came the above-named officer for the Company aforesaid, to me personally known to be the officer described in and who executed the preceding instrument, and he acknowledged the execution of the same, and being by me duly sworn, deposes and says, that he is the officer of the Company aforesaid, that the seal affixed hereto is the corporate seal of said Company, and the said corporate seal and his signature were duly affixed and subscribed to said instrument by the authority and direction of said Company.

BARRY T. BASSIS
Notary Public, State of New York
No. 02BA4656400
Qualified in New York County
Commission Expires April 30, 2019

Notary Public
My Commission Expires
April 30, 2019

### CERTIFICATE

I, Laura B. Guy, Assistant Secretary of the Company, do hereby certify that the foregoing is a full, true and correct copy of the original power of attorney issued by the Company; that the resolution included therein is a true and correct transcript from the minutes of the meetings of the boards of directors and the same has not been revoked or amended in any manner; that said Antonio C. Albanese was on the date of the execution of the foregoing power of attorney the duly elected officer of the Company, and the corporate seal and his signature as officer were duly affixed and subscribed to the said instrument by the authority of said board of directors; and the foregoing power of attorney is still in full force and effect.

IN WITNESS WHEREOF, I have hereunto subscribed my name as Assistant Secretary, and affixed the corporate seal of said Company this 9TL day of August, 2019.

Assistant Secretary

This document is void if VOID appears in the BLUE line on the right, the Nationwide watermark is missing from the center of the page and/or the red consecutive number is missing from the upper right-hand corner. Contact us at 212-329-6900 if this document is void or if you have any questions.