## AGREEMENT FOR PROFESSIONAL SERVICES BETWEEN
## COASTAL BRIDGE COMPANY, LLC AND VOLKERT, INC.

This Agreement made and entered into this 11th day of September 2019, by and between Coastal Bridge Company, LLC, hereafter referred to as the DB Contractor, and Volkert, Inc., hereinafter referred to as the CONSULTANT; WITNESSETH THAT:

WHEREAS, the DB CONTRACTOR desires to retain the CONSULTANT to perform certain professional engineering services as outlined in the Scope of Services;

WHEREAS, the CONSULTANT desires to perform said professional services for the DB CONTRACTOR;

NOW, THEREFORE, for and in consideration of the mutual covenants hereinafter stipulated to be kept and performed, the parties hereto agree as follows:

### ARTICLE 1
### DEFINITIONS

**1.1** PROJECT or PROJECTS.       The total construction or scope of which the Work to be performed under the Contract Documents may be the whole, or a part.

**1.2** BASIC SERVICES. The professional services to be performed by CONSULTANT under this Agreement, as set out in Article 3 and as described in the "Basic Services" of Attachment A.

**1.3** ADDITIONAL SERVICES. Any services beyond Basic Services as described in Article 3 and the "Basic Services" of Attachment A, as mutually agreed to in writing between DB CONTRACTOR and CONSULTANT.

**1.4** CONSTRUCTION CONTRACT.   The entire and integrated written agreement, or agreements, between DB CONTRACTOR and OWNER concerning the Work.

**1.5** CONTRACT DOCUMENTS. Those items so designated in the Construction Contract, including the Drawings, Specifications, Construction Contract, and general and supplementary conditions.   Only printed or hard copies of the items listed in the Construction Contract are Contract Documents.   Reviewed Shop Drawings, other Contractor submittals, and the reports and drawings of subsurface and physical conditions are not Contract Documents.

**1.6** DRAWINGS.   That part of the Contract Documents prepared or approved by CONSULTANT which graphically shows the scope, extent, and character of the Work to be


EXHIBIT
C

performed by Contractor.  Shop Drawings are not Drawings as so defined.

**1.7**    SPECIFICATIONS.  That part of the Contract Documents consisting of written technical descriptions of materials, equipment, systems, standards, and workmanship as applied to the Work and certain administrative details applicable thereto.

**1.8**    SHOP DRAWINGS.    All drawings, diagrams, illustrations, schedules, and other data or information which are specifically prepared or assembled by or for the DB Contractor by someone other than CONSULTANT and submitted by Contractor to illustrate some portion of the Work.

**1.9**    RECORD DRAWINGS.  Also referred to as "As-Builts" and "As-Built Plans," Record Drawings shall mean drawings depicting the completed Project, prepared by CONSULTANT as an Additional Service and based solely on DB Contractor's record copy of all Drawings, Specifications, addenda, change orders, work change directives, field orders, and written interpretations and clarifications, as delivered to CONSULTANT and annotated by Contractor to show changes made during construction.

**1.10**   CONSTRUCTION OBSERVER.  The authorized representative of CONSULTANT assigned to assist CONSULTANT at the site during construction.   As used herein, the term CONSTRUCTION OBSERVER includes any assistants or field staff of CONSTRUCTION OBSERVER agreed to by DB CONTRACTOR.   The duties and responsibilities of the CONSTRUCTION OBSERVER, if any, are as set forth in the "Basic Services" of Attachment A.

**1.11**   DB CONTRACTOR.  The DB Contractor is the entity which enters into the agreement with the OWNER (Formosa) to perform the construction of or any construction on any Project, including, without limitation, the providing of labor, materials, and equipment incorporated or to be incorporated into the Project.  The term "DB Contractor" means the Contractor or its authorized representative but excludes the CONSULTANT and its subconsultants.

**1.12**   APPLICABLE LAWS.  Applicable Laws, as used herein, shall mean the law of the State of Louisiana as well as applicable regulations, codes and licenses promulgated or issued by any board, commission or agency having authority and jurisdiction over this Agreement.

**ARTICLE 2**
**RELATIONSHIP OF THE PARTIES**

CONSULTANT is providing professional engineering services pursuant to this Agreement. Nothing in this Agreement shall be construed to mean that CONSULTANT assumes any responsibility or duties of the DB Contractor or can be held liable for its failure to perform its obligations and duties to DB CONTRACTOR. The DB Contractor will be solely responsible for means, methods, techniques, sequences and procedures used in the construction of the Project and for the safety of its personnel, property and its operations, and for performing in accordance with its contract(s) with the OWNER, as well as for any damages for construction defects caused, in whole or in part, by the DB Contractor's work. CONSULTANT shall be able to rely upon the DB Contractor for the proper performance of its obligations.

DB CONTRACTOR acknowledges and takes into account the fact that CONSULTANT does not have a contract with the Owner and, as such, cannot direct its respective means and methods, its forces, its personnel, its subcontractors, suppliers and/or subconsultants. CONSULTANT cannot require those parties with which it has no contract to refrain from or perform any acts they are not willing to perform. Requiring action or conduct out of Owner is the responsibility of the DB CONTRACTOR.

**ARTICLE 3**
**SCOPE OF SERVICES**

3.1   Generally.   CONSULTANT shall perform the Basic Services set forth in Schedule of Services to be addressed in Attachment A, as well as any Additional Services in accordance with the terms and conditions herein.

CONSULTANT's Scope of Services as set out hereunder are finite, and CONSULTANT is not being compensated by DB CONTRACTOR to provide or perform services which are not specifically set out herein. Anything not expressly stated in this provision, or in Attachment A, or in any subsequent written agreements between DB CONTRACTOR and CONSULTANT, are not a part of CONSULTANT's Scope of Services.

3.1.1 Safety.        Consistent with and pursuant to Section 3.2.4, *infra*, CONSULTANT shall not be responsible for site safety, or for the safety of DB Contractor or its employees or subcontractors. CONSULTANT is not being retained to, and shall not be expected or required to, research or review the safety record or history of OSHA violations of any potential bidding contractor, and shall not be expected, required, or retained to undertake vetting, pre-screening, researching, or approving any potential bidding contractor based on

its safety record.

## 3.2    Standards of Performance.

**3.2.1   Standard of Care.** CONSULTANT shall at all times endeavor to perform Basic Services in conformance with the generally accepted care and skill exercised by professional engineers practicing under similar circumstances at the same time and in the same locality. CONSULTANT makes no warranties, express or implied, under this Agreement or otherwise, in connection with CONSULTANT's services, and guarantees no particular result. CONSULTANT neither guarantees the performance of the DB Contractor, nor assumes the responsibility of the DB Contractor to furnish or perform its obligations to the OWNER, whether arising from the Construction Contracts, the Contract Documents or otherwise.

**3.2.2    Consultants.** CONSULTANT may retain such subconsultants as CONSULTANT deems necessary to assist in the performance or furnishing of the services, subject to written approval by DB Contractor and such approval shall not be unreasonably withheld.

**3.2.3    Reliance on Others.** Subject to the Standard of Care set forth in Paragraph 3.2.1, *supra*, CONSULTANT and its subconsultants may use or rely upon design elements and information ordinarily or customarily furnished by others, including, but not limited to, DB CONTRACTOR, OWNER, specialty contractors, manufacturers, suppliers, and the publishers of technical standards.

## 3.2.4    CONSULTANT and DB CONTRACTOR.

**3.2.4.1** CONSULTANT shall not at any time supervise, direct, control, or have authority over any contractor work, nor shall CONSULTANT have authority over or be responsible for the means, methods, techniques, sequences, or procedures of construction selected or used by the Contractor, or the safety precautions and programs incident thereto, for security or safety at any Project site, nor for any failure of the Contractor to comply with Applicable Law and Contract Documents as it pertains to the Contractor's furnishing and performing of its work.

**3.2.4.2** CONSULTANT neither guarantees the performance of the Contractor nor assumes responsibility for the Contractor's failure to furnish and perform the Work in accordance with the Contract Documents.

**3.2.4.3** CONSULTANT shall not be responsible for the acts or omissions of the Contractor, or of any subcontractor, supplier, or any of their agents or employees, or of any other persons (except CONSULTANT's own agents, employees, and subconsultants) at the Project site or otherwise furnishing or performing any Work; or for any decision made regarding the Contract Documents, or any application, interpretation, or clarification, of the Contract Documents, other than those made by CONSULTANT.

3.2.4.4 While at the Project site, CONSULTANT's employees and representatives shall comply with the specific applicable requirements of OWNER's and DB CONTRACTOR's safety programs of which CONSULTANT has been informed in writing.

## 3.3 Additional Services

It is mutually understood and agreed that the DB CONTRACTOR will compensate the CONSULTANT for services resulting from changes in the scope of a project or its design, including but not necessarily limited to, change in size, complexity, project schedules, character of construction, revisions to previously accepted studies, reports, design documents or contract documents and for preparation of documents for separate bids, when such revisions are due to causes beyond the CONSULTANT's control and when requested or authorized by the DB CONTRACTOR. Notwithstanding anything to the contrary contained herein, all Additional Services shall be approved in advance by the DB Contractor. In the event the Consultant commence work for Additional Service without prior written approval form the DB Contractor, all claims by Consultant for compensation for the Additional Service shall be waived.

When requested by DB CONTRACTOR, in writing, CONSULTANT shall furnish or obtain from others Additional Services of the types listed below.

(a) Preparation of applications and supporting documents (in addition to those furnished under Basic Services, if any) for private or governmental grants, loans, or advances in connection with the Project; preparation or review of environmental assessments and impact statements; review and evaluation of the effects on the design requirements for the Project of any such statements and documents prepared by others; and assistance in obtaining approvals of authorities having jurisdiction over the anticipated environmental impact of the Project.

(b) Services (in addition to those furnished under Basic Services, if any) to assist DB CONTRACTOR in obtaining bids from sub-contractors.

(c) Services (in addition to those furnished under Basic Services, if any) to make measured drawings of or to investigate existing conditions or facilities, or to verify the accuracy of drawings or other information furnished by DB CONTRACTOR or others.

(d) Services resulting from significant changes in the scope, extent, or character of the portions of the Project designed or specified by CONSULTANT or its design requirements including, but not limited to, changes in size, complexity, DB CONTRACTOR's schedule, character of construction, or method of financing; and revising previously accepted studies, reports, Drawings, Specifications, or Contract Documents when such revisions are required by changes in Laws and Regulations enacted

subsequent to the Effective Date or are due to any other causes beyond CONSULTANT's control.

(e)    Services required as a result of DB CONTRACTOR's providing incomplete or incorrect Project Information to CONSULTANT.

(f)    Undertaking investigations and studies including, but not limited to, detailed consideration of operations, maintenance, and overhead expenses; the preparation of financial feasibility and cash flow studies, rate schedules, and appraisals; detailed quantity surveys of materials, equipment, and labor; and audits or inventories required in connection with construction performed by DB CONTRACTOR.

(g)    Furnishing services of Consultants for other than Basic Services.

(h)    Services during out-of-town travel required of CONSULTANT other than for visits to the Site or DB CONTRACTOR's office as required in Basic Services.

(i)    Preparing additional Bidding Documents or Contract Documents for alternate bids or prices requested by DB CONTRACTOR for the Work or a portion thereof.

(j)    Assistance in connection with bid protests, rebidding, or renegotiating contracts for construction, materials, equipment, or services.

(k)    Providing construction surveys and staking (in addition to those furnished under Basic Services, if any) to enable Contractor to perform its work and any type of property surveys or related engineering services; and providing other special field surveys.

(l)    Providing Basic Services beyond the original date for completion and readiness for final payment of Contractor.

(m)    Preparing Record Drawings (in addition to those furnished under Basic Services, if any) showing appropriate record information based on Project annotated record documents received from Contractor and furnishing such Record Drawings to DB CONTRACTOR.

(n)    Supplementing Record Drawings with information regarding the completed Project, Site, and immediately adjacent areas obtained from field observations, DB CONTRACTOR, utility companies, and other reliable sources.

(o)    Conducting surveys, investigations, and field measurements to verify the accuracy of Record Drawing content obtained from Contractor, DB

CONTRACTOR, utility companies, and other sources; revise and supplement Record Drawings as needed.

(p) Preparing to serve or serving as a consultant or witness for DB CONTRACTOR in any litigation, arbitration, or other dispute resolution process related to the Project.

(q) Preparation of operation and maintenance manuals; assistance to DB CONTRACTOR in training DB CONTRACTOR's staff to operate and maintain Project equipment and systems; assistance to DB CONTRACTOR in developing procedures for (a) control of the operation and maintenance of Project equipment and systems, and (b) related record-keeping.

(r) Overtime work requiring higher-than-regular rates.

(s) Extensive services required during any correction period, or with respect to monitoring Contractor's compliance with warranties and guarantees called for in the Construction Contract (except as agreed to under Basic Services).

(t) Other services performed or furnished by CONSULTANT not otherwise provided for in this Agreement.

(u) Services in connection with work change directives and change orders to reflect changes requested by DB CONTRACTOR.

(v) Services resulting from significant delays, changes, or price increases occurring as a direct or indirect result of materials, equipment, or energy shortages.

(w) Additional or extended services during construction made necessary by (1) emergencies or acts of God endangering the Work (advance notice not required), (2) the presence at the Site of any items of historical or cultural significance, (3) Work damaged by fire or other cause during construction, (4) a significant amount of defective, neglected, or delayed work by Contractor, (5) acceleration of the progress schedule involving services beyond normal working hours, or (6) default by Contractor.

## ARTICLE 4
## COMPENSATION OF CONSULTANT

**4.1** CONSULTANT shall be compensated by DB CONTRACTOR on a Lump Sum basis, in accordance with Attachment B hereto.

**4.1.1** DB CONTRACTOR shall pay all costs associated with Additional Services authorized by the DB CONTRACTOR.

**4.1.2** For Projects involving a supplemental agreement, the scope of services, schedule, and amount of compensation to be paid will be included therein

**4.1.3** The DB CONTRACTOR will pay the CONSULTANT for services performed by subconsultants at the actual invoice amount times a factor of 1.10 for assisting and coordinating the subconsultant's services.

**4.1.4** Reimbursable expenses are defined as follows: Travel and subsistence cost, printing and reproduction, computer services, advertising costs, mail distribution costs, permit fees, application fees or deposits, and all other costs incidental to performing the assignment.

**4.1.5** The DB CONTRACTOR as purchaser of the services described herein shall pay any applicable sales tax in the manner and in the amount as required by law

**4.2** Invoices. CONSULTANT shall prepare invoices in accordance with its standard invoicing practices. CONSULTANT shall submit its invoices to DB CONTRACTOR on a monthly basis. Consultant acknowledges and agrees that payment to Consultant is condition of DB Contractor receipt of payment from the Owner. Consequently, all payments to Consultant hereunder, whether progress or final payment, or for changes or delays to the Service shall not be due until land if Design-Builder actually receives payment on account of same from Owner.  DB Contractor shall pay consultant within 7 days for receipt of payment by Owner.

If DB Contractor determines that Consultant is not entitled to all or part of an Application for Payment, it will notify Consultant in writing at least five (5) days after receipt of invoice. The notice shall indicate the specific amounts DB Contractor intends to withhold, the reasons and contractual basis for the withholding, and the specific measures Consultant must take to rectify DB Contractor's concerns. DB Contractor and Consultant will attempt to resolve DB Contractor's concerns prior to the date payment is due. If the parties cannot resolve such concerns, DB Contractor shall pay Consultant the uncontested amount of the Application for Payment, and Consultant may pursue its rights under the Contract Documents

**4.3** Payments. Application to Interest and Principal:  Payment will be credited first to any interest owed to CONSULTANT and then to principal.

**4.3.1** Payment shall be made payable to Volkert, Inc. and submitted to the following address:
Department #2042, Volkert, Inc.
P. O. Box 11407
Birmingham, AL 35246-2042

**4.3.2** Failure to Pay.  If DB CONTRACTOR fails to make any payment due CONSULTANT for services and expenses within 30 days after receipt of CONSULTANT's invoice, then:

(a) CONSULTANT may, after giving seven days written notice to DB CONTRACTOR, suspend services under this Agreement until DB CONTRACTOR has paid in full all amounts due for services, expenses, and other related charges.  DB CONTRACTOR waives any and all claims against CONSULTANT for any such suspension.

**4.4** Disputed Invoices.  If DB CONTRACTOR contests an invoice, DB CONTRACTOR shall promptly advise CONSULTANT of the specific basis for doing so, may withhold only that portion so contested, and must pay the undisputed portion.

## ARTICLE 5
## RESPONSIBILITIES OF THE DB CONTRACTOR

In addition to other responsibilities of DB CONTRACTOR as set forth in this Agreement, DB CONTRACTOR shall, at its expense:

**5.1** Provide CONSULTANT with all criteria and full information regarding DB CONTRACTOR's and the OWNER'S requirements for the Project, including design objectives and constraints, space, capacity and performance requirements, flexibility and expandability, and any budgetary limitations.

**5.3** Furnish to CONSULTANT any other available information pertinent to the Project, including reports and data relative to previous designs or investigation at or adjacent to the Project site(s).

**5.4** Furnish or otherwise make available to CONSULTANT such Project-related information and data as are reasonably required to enable CONSULTANT to complete its Basic and Additional Services hereunder.  Such information and data would generally include the following:

**5.4.1** Property descriptions;

**5.4.2** Zoning, deed, and other land use restrictions;

**5.4.3** Utility and topographic mapping and surveys;

**5.4.4** Property, boundary, easement, right-of-way, and other special surveys or data, including establishing relevant reference points;

**5.4.5** Explorations and tests of subsurface conditions at or contiguous to the Project site, drawings of physical conditions relating to existing surface or subsurface structures at the Project site, or hydrographic surveys, with appropriate professional interpretation thereof.

**5.4.6** Environmental assessments, audits, investigations, and impact statements, and other relevant environmental or cultural studies as to the Project, the Project site, and adjacent areas.

**5.5** Arrange for safe access to, and make all provisions for, CONSULTANT to enter upon public and private property as may be required for CONSULTANT to perform Services hereunder. CONSULTANT shall take reasonable precautions to minimize damage to the property during the course of its Services. DB CONTRACTOR acknowledges that a certain amount of damage, wear and tear, and depreciation is likely to result from CONSULTANT's operations on the property in furtherance of CONSULTANT's Services under this Agreement. The cost for restoration or remediation of damaged property which may result from CONSULTANT's operations is not included in CONSULTANT's compensation hereunder unless explicitly stated otherwise in this Agreement. If the property is damaged during CONSULTANT's operations and if DB CONTRACTOR desires CONSULTANT to restore or remediate the property to its former condition, CONSULTANT will do so for additional compensation.

**5.6** Examine all alternate solutions ("value engineering"), studies, reports, sketches, Drawings, Specifications, proposals, and other documents presented by CONSULTANT (including obtaining the advice of an attorney, insurance counselor, and other advisors or consultants as DB CONTRACTOR deems appropriate with respect to such examination) and render timely written decisions pertaining thereto.

**5.7** Provide reviews, approvals, and permits from all governmental authorities having jurisdiction to approve all phases of the Project as designed or specified by CONSULTANT, and such reviews, approvals, and consents from others as may be necessary for completion of each phase of the Project.

**5.8** Provide the following services in recognition and acknowledgement that CONSULTANT's Services do not include them:

**5.8.1** Accounting, bond and financial advisory, independent cost estimating, and insurance counseling services;

**5.8.2** Legal services and advice with regard to issues pertaining to the Project as DB CONTRACTOR requires, as Contractor raises, and/or as CONSULTANT reasonably requests.

**5.9** Inform CONSULTANT in writing of any specific safety or security plans or requirements to which CONSULTANT will be required to adhere while on the Project site.

**5.10**   Designate and identify to CONSULTANT a person to act with authority on DB CONTRACTOR's behalf.

**5.11**   Communicate to CONSULTANT in writing with regard to any issues that impact project safety or the project schedule or cost.

## ARTICLE 6
## INSURANCE AND INDEMNFICIATION

**6.1**   Insurance.   CONSULTANT shall procure and maintain the types and amounts of insurance as are set forth below.   CONSULTANT shall cause DB CONTRACTOR to be an additional insured on CONSULTANT's policy of commercial general liability and automobile liability insurance.

**6.1.1**   Commercial General Liability

| | | |
|---|---|---|
| (a) | Each Occurrence: | $1,000,000 |
| (b) | General Aggregate: | $2,000,000 |

**6.1.2**   Automobile Liability (Combined Single Limit BI/PD)

| | | |
|---|---|---|
| (a) | Each Accident: | $1,000,000 |

**6.1.3**   Worker Compensation:                     Statutory

**6.1.4**   Employers' Liability

| | | |
|---|---|---|
| (a) | Each Accident: | $1,000,000 |
| (b) | Disease, Each Employee: | $1,000,000 |
| (c) | Disease, Policy Limit: | $1,000,000 |

**6.1.5**   Professional Liability

| | | |
|---|---|---|
| (a) | Each Claim: | $2,000,000 |
| (b) | Annual Aggregate: | $2,000,000 |

**6.1.6**   DB CONTRACTOR shall purchase and maintain policies of insurance covering worker compensation, general liability, property damages (other than to the Work itself), motor vehicle damage and injuries, builder's risk, and other insurance necessary to protect DB CONTRACTOR's and CONSULTANT's interests in the Project.  DB CONTRACTOR shall require Contractor to be fully licensed and bonded.  DB CONTRACTOR shall require Contractor to cause DB   CONTRACTOR   and   CONSULTANT,   their   officers,   directors,   employees,   agents,

representatives, assigns and subconsultants to be named, listed or otherwise made additional insureds with respect to such liability and other insurance purchased and maintained by Contractor for the Project.

**6.17**   DB CONTRACTOR and CONSULTANT hereby mutually waive all rights of subrogation, as well as all claims and other rights they may have against each other for loss of and/or damage to (a) the Work and any Project therein, (b) all materials, machinery, equipment and other items used in the Project and/or to be incorporated into the Project, while the same are in transit, at Project sites, during erection and otherwise, and (c) all property owned by or in the custody of DB CONTRACTOR and its affiliates, however such loss or damage shall occur, except such rights as they may have to the proceeds of such instance held by the DB CONTRACTOR as trustee.  If DB CONTRACTOR is not the sole DB Contractor of the Project sites and all property at and adjacent thereto, DB CONTRACTOR shall obtain an undertaking from the other DB Contractors thereof sufficient to provide CONSULTANT the same protection from liability for loss or damage as would be afforded to CONSULTANT under this Agreement if DB CONTRACTOR were the sole DB Contractor.  DB CONTRACTOR shall cause all policies of property insurance relating to the Project to contain a provision or endorsement to the effect that in the event of payment of any loss or damage, the insurers will have no rights of recovery against CONSULTANT or its subconsultants, or any insureds, additional insureds, or loss payees thereunder.

**6.2**   Indemnification.

**6.2.1**   Indemnification by CONSULTANT.   To the fullest extent permitted by law, CONSULTANT shall indemnify DB CONTRACTOR and DB CONTRACTOR's officers, directors and employees for costs, losses, judgments, damages and expenses (including reasonable attorneys' fees) to the extent caused by the negligent acts, errors and omissions of CONSULTANT in the performance of its professional Services hereunder.  In any matters involving allegations of negligent performance of professional Services by CONSULTANT, CONSULTANT's defense duties under this indemnification provision (which are expressly disclaimed) shall include only reimbursement of reasonable defense costs to the extent incurred as a proximate result of CONSULTANT's actual negligent performance.

**6.2.2**   Indemnification by DB CONTRACTOR.  To the fullest extent permitted by law, DB CONTRACTOR shall indemnify and hold harmless CONSULTANT and its officers, directors, members, partners, agents, employees, and subconsultants from and against any and all claims, costs, losses, and damages (including but not limited to all fees and charges of engineers, architects, attorneys, and other professionals, and all court, arbitration, or other dispute resolution costs) arising out of or relating to the Project, provided that any such claim, cost, loss, or damage is attributable to bodily injury, sickness, disease, or death or to injury to or destruction of tangible property, including the loss of use resulting therefrom, but only to the extent caused by any negligent act, omission, or willful misconduct of DB CONTRACTOR or DB CONTRACTOR officers, directors, members, partners, agents, employees, consultants, or others retained by or under contract to the DB CONTRACTOR with respect to this Agreement or to the Project.

**6.2.3** <u>Environmental Indemnification.</u>  To the fullest extent permitted by law, DB CONTRACTOR shall indemnify and hold harmless CONSULTANT and its officers, directors, employees, and subconsultants from and against any and all claims, costs, losses, and damages (including but not limited to all fees and charges of engineers, architects, attorneys and other professionals, and all court, arbitration, or other dispute resolution costs) caused by, arising out of, relating to, or resulting from any substance, product, waste, or other material of any nature whatsoever (including, but not limited to, Asbestos, Petroleum, Radioactive Material, and PCBs) which is or becomes listed, regulated, or addressed pursuant to (a) the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§9601 et seq. ("CERCLA"); (b) the Hazardous Materials Transportation Act, 49 U.S.C. §§1801 et seq.; (c) the Resource Conservation and Recovery Act, 42 U.S.C. §§6901 et seq. ("RCRA"); (d) the Toxic Substances Control Act, 15 U.S.C. §§2601 et seq.; (e) the Clean Water Act, 33 U.S.C. §§1251 et seq.; (f) the Clean Air Act, 42 U.S.C. §§7401 et seq.; and (g) any other federal, state, or local statute, law, rule, regulation, ordinance, resolution, code, order, or decree regulating, relating to, or imposing liability or standards of conduct concerning, any hazardous, toxic, or dangerous waste, substance, or material at, on, or under the Site, provided that (1) any such claim, cost, loss, or damage is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself), including the loss of use resulting therefrom, and (2) nothing in this paragraph shall obligate DB CONTRACTOR to indemnify any individual or entity from and against the consequences of that individual's or entity's own negligence or willful misconduct.

**6.2.4** <u>Percentage Share of Liability.</u>
DB CONTRACTOR and CONSULTANT hereby expressly agree that each party's total liability under this Agreement shall not exceed the party's percentage share of the total liability of a claim or dispute arising under this Agreement.

**ARTICLE 7**
**TERMINATION AND SUSPENSION**

**7.1** Suspension.

**7.1.1** <u>BY DB CONTRACTOR.</u>  DB CONTRACTOR may suspend the Project for up to 90 days upon seven days written notice to CONSULTANT.

**7.2** <u>Termination.</u>  The obligation to provide further Services under this Agreement may be terminated:

**7.2.1** <u>For cause,</u>

(a) By either party upon 30 days written notice in the event of substantial failure by the other party to perform in accordance with the terms hereof through no fault of the terminating party.

**7.2.1.1** If Consultant persistently fails to (i) comply with applicable Legal Requirements, (ii) prosecute the Services with promptness and diligence so that the Services are completed by the times set forth in the Design Schedule or the Project Schedule, (iv) provide qualified, licensed design professionals, or (v) perform material obligations under the Contract Documents, then Design-Builder shall have the rights, in addition to any other rights and remedies provided in the Contract Documents or by law, set forth in Sections 7.2.1.2 and 7.2.2.3 below.

**7.2.1.2** Upon the occurrence of an event set forth in Section 7.2.1.1 above, DB Contractor may provide written notice to Consultant that it intends to terminate the Agreement unless the problem cited is cured, or commenced to be cured, within seven (7) days of Consultant's receipt of such notice. If Consultant fails to cure, or reasonably commence to cure, such problem, then DB Contractor may give a second written notice to Consultant of its intent to terminate within an additional seven (7) day period. If Consultant, within such second seven (7) day period, fails to cure, or reasonably commence to cure, such problem, then DB Contractor may declare the Agreement terminated for default by providing written notice to Consultant of such declaration.

**7.2.1.3** Upon declaring the Agreement terminated pursuant to Section 7.2.1.2 above, DB Contractor may complete the Services in whatever fashion it deems most efficient and shall have the right to use the existing Work Product for purposes of completing the Project. To the extent DB Contractor has been adversely impacted by Consultant's default and termination, DB Contractor shall be entitled to recover against Consultant as per the terms of this contract

**7.2.2**   For convenience,

(a) By DB CONTRACTOR effective upon CONSULTANT's receipt of notice from DB CONTRACTOR.

**7.3**   Effective Date of Termination. The terminating party under Paragraph 7.2 may set the effective date of termination at a time up to 30 days later than otherwise provided to allow CONSULTANT to demobilize personnel and equipment from the Project site, to complete tasks whose value would otherwise be lost, to prepare notes as to the status of completed and uncompleted tasks, and to assemble Project materials in orderly files.

**7.4.**   Payments Upon Termination

**7.4.1**   In the event of any termination under Paragraph 7.2, CONSULTANT will be entitled to invoice DB CONTRACTOR and to receive full payment for all Services performed or furnished in accordance with this Agreement and all reimbursable expenses incurred through the effective date of termination.   Upon making such payment, DB CONTRACTOR shall have the limited right to the use of Documents, at DB CONTRACTOR's sole risk, subject to the provisions of Paragraph 8.2 ("DB Contractorship and Reuse of Documents").

**7.4.2** In the event of termination by DB CONTRACTOR for convenience, or by CONSULTANT for cause, CONSULTANT shall be entitled, in addition to invoicing for those items identified in Paragraph 7.4.1, to invoice DB CONTRACTOR and to payment of a reasonable amount for services and expenses directly attributable to termination, both before and after the effective date of termination, such as reassignment of personnel, costs of terminating contracts with CONSULTANT's subconsultants, and other related close-out costs, using methods and rates for Additional Services as set forth herein. In no event shall the Consultant be paid more than the agreed to Contract plus approved amendments.

**ARTICLE 8**
**MISCELLANEOUS PROVISIONS**

**8.1** <u>Contract Period</u>: All contracts, agreements, provisions and stipulations of this Agreement shall remain in full force for a period to extend past the completion of construction from the date of the Agreement, and for such periods as the contract time may be extended by mutual written agreement between the DB CONTRACTOR and the CONSULTANT.

**8.2** <u>DB Contractorship and Reuse of Documents.</u> All Project documents including but not necessarily limited to reports, Drawings, studies, findings, correspondence, specifications, survey notes, estimates, maps, computations, calculations, computer files, computer assisted design and drafting (CADD) files (electronic and hard copy), and other data, as well as any and all other documents and other materials prepared, generated, or furnished by or for CONSULTANT and/or its subconsultant(s) for the Project pursuant to this Agreement (hereinafter referred to in this Paragraph 8.2 as "Documents") are instruments of service with respect to the Project, and CONSULTANT shall retain an DB Contractorship and intellectual property interest therein regardless whether the Project is completed. DB CONTRACTOR may make and retain copies thereof for information and reference in connection with the use and/or occupancy of the Project by DB CONTRACTOR and others. However, such Documents are not intended for reuse or future use by DB CONTRACTOR or others for any purpose whatsoever or on any other project. No representation is made that such Documents are or will be suitable for reuse or future use by DB CONTRACTOR or others for any purpose whatsoever or on any other project. Any use of such Documents by DB CONTRACTOR or others on any project other than the Project which is the subject of this Agreement is not advised and shall be done without warranty, representation, or liability to any extent whatsoever on the part of CONSULTANT. DB CONTRACTOR shall defend, indemnify, save and hold harmless CONSULTANT, its officers, directors, employees, agents, successors, and assigns against any and all liability for any and all claims, demands, fines, fees, damages, actions, causes of action, lawsuits, expenses (including attorneys' fees), mediations, and arbitrations arising out of, resulting from, or relating in any way to the DB CONTRACTOR's use of such Documents.

**8.3** <u>Electronic Transmittals.</u>
**8.3.1** DB CONTRACTOR and CONSULTANT may transmit, and shall accept, project-related correspondence, documents, text, data, drawings, information, and graphics, in

electronic media or digital format, either directly, or through access to a secure project website, in accordance with a mutually agreeable protocol.

     **8.3.2** If this Agreement does not establish protocols for electronic or digital transmittals, then DB CONTRACTOR and CONSULTANT shall jointly develop such protocols.

     **8.3.3** When transmitting items in electronic media or digital format, the transmitting party makes no representations as to long term compatibility, usability, or readability of the items resulting from the recipient's use of software application packages, operating systems, or computer hardware differing from those used in the drafting or transmittal of the items, or from those established in applicable transmittal protocols.

**8.5**    Successors and Assigns
     **8.5.1** DB CONTRACTOR and CONSULTANT each is hereby bound and the partners, successors, executors, administrators and legal representatives of DB CONTRACTOR and CONSULTANT (and to the extent permitted by Paragraph 8.4.2, the assigns of DB CONTRACTOR and CONSULTANT) are hereby bound to the other party to this Agreement and to the partners, successors, executors, administrators and legal representatives (and said assigns) of such other party, in respect of all covenants, agreements and obligations of this Agreement.

     **8.5.2** Neither DB CONTRACTOR nor CONSULTANT shall assign, sublet or transfer any rights under or interest in (including, but without limitation, monies that may become due or monies that are due) this Agreement without the written consent of the other, except to the extent that any assignment, subletting or transfer is mandated by law or the effect of this limitation may be restricted by law. Unless specifically stated to the contrary in any written consent to an assignment, no assignment will release or discharge the assignor from any duty or responsibility under this Agreement. Nothing contained in this paragraph shall prevent CONSULTANT from employing such independent professional associates and consultants as CONSULTANT may deem appropriate to assist in performance of Services hereunder.

     **8.5.3** Nothing under this Agreement shall be construed to give any right or benefits in this Agreement to anyone other than DB CONTRACTOR and CONSULTANT, and all duties and responsibilities undertaken pursuant to this Agreement will be for the sole and exclusive benefit of DB CONTRACTOR and CONSULTANT and not for the benefit of any other party. DB CONTRACTOR agrees that that the substance of the provisions of this Paragraph 8.4.3 shall appear in the construction Contract Documents.

**8.6**    Dispute Resolution. If a dispute arises out of or relates to this Agreement or its alleged breach, the DB CONTRACTOR and CONSULTANT shall direct their representatives to endeavor to settle the dispute first through direct discussions. If the dispute cannot be resolved through direct discussions, the DB CONTRACTOR and CONSULTANT shall participate in mediation before recourse to litigation. The DB CONTRACTOR's and CONSULTANT's representatives shall attend all mediation sessions. <u>Engaging in mediation is a condition precedent to litigation. Only after the parties have exhausted direct discussions AND mediation in accordance with the foregoing</u>

shall either of them be entitled to initiate litigation. Should either party initiate litigation prior to engaging in direct discussions and good faith mediation, it shall pay all attorneys' fees and expenses and other costs incurred by the other party in responding to said litigation. Any provisions herein to the contrary notwithstanding, DB CONTRACTOR and CONSULTANT hereby agree that any disputes between them will be tied to the Bench and not to a jury, and each of them willfully and voluntarily waives its right to trial by jury for any dispute arising out of this Agreement.

**8.7    Disclaimer of Third-Party Benefits.**  DB CONTRACTOR and CONSULTANT expressly disclaim third-party beneficiaries hereunder and no one not a Party to the Agreement shall be entitled to seek enforcement against DB CONTRACTOR and/or CONSULTANT of any provision herein, or to otherwise seek damages from either Party for the alleged breach of any provision contained herein or purported duty or standard created or conferred hereunder.  It is specifically agreed between the parties executing this Agreement that it is not intended by any of the provisions of any part of the Agreement to create in the public or any member thereof a third party beneficiary hereunder, or to authorize anyone not a Party to the Agreement to maintain a claim, cause of action, lien or any other damages or any relief of any kind pursuant to the terms and provisions of this Agreement.

**8.8    Waiver of Consequential Damages.**  Notwithstanding any other provision of this Agreement, and to the fullest extent permitted by law, neither DB CONTRACTOR nor CONSULTANT, their respective officers, directors, agents, partners, employees, contractors or subconsultants shall be liable to the other or shall make any claim for any incidental, indirect or consequential damages arising out of or connected in any way to the Project or to this Agreement. This mutual waiver of consequential damages shall include, but is not limited to, loss of use, loss of profit, loss of business, loss of income, loss of reputation, or any other consequential damages that either party may have incurred from any cause of action including negligence, strict liability, breach of contract and breach of strict or implied warranty.  Both DB CONTRACTOR and CONSULTANT shall require similar waivers of consequential damages protecting all of the entities and persons named herein in all contracts and subcontracts with others involved in the Project.

**8.9    Jurisdiction/Venue.**  It is expressly agreed and stipulated between the parties that this Agreement shall be deemed to have been executed in the State of Louisiana where the branch office of Volkert, Inc. is located. This Agreement shall be governed by the laws of the State of Louisiana and any disputes related to or arising out of this Agreement or its alleged breach shall be brought in the appropriate courts of the State of Louisiana exclusive of its choice of law provisions.

**8.10    Severability.**  Any provision or part hereof which is held to be void or unenforceable under Applicable Laws shall be deemed stricken, and all remaining provisions shall continue to be valid and binding upon DB CONTRACTOR and CONSULTANT, which hereby agreed that the Agreement shall be reformed to replace such stricken provision or part hereof with a valid and

enforceable provision that comes as close as possible to expressing the intent of the stricken provision.

**8.11**   <u>Total Agreement.</u>      This Agreement, (together with the attachments included above) constitutes the entire agreement between DB CONTRACTOR and CONSULTANT and supersedes all prior written or oral understandings. This Agreement may only be amended, supplemented, modified, or canceled by a written instrument duly executed by both parties.

**8.12**   <u>Designated Representative.</u>  With the execution of this Agreement, CONSULTANT and DB CONTRACTOR shall designate specific individuals to act as CONSULTANT's and DB CONTRACTOR's representatives with respect to the services to be performed or furnished by CONSULTANT and responsibilities of DB CONTRACTOR under this Agreement.   Such an individual shall have authority to transmit instructions, receive information, and render decisions relative to this Agreement on behalf of the respective party whom the individual represents.

**IN WITNESS WHEREOF, the parties hereto have executed this Agreement, the Effective Date of which is indicated on page 1.**

| DB CONTRACTOR: | CONSULTANT:          VOLKERT, INC. |
|---|---|
| By:   (signature) | By: |
| Print name: | Print name:    Janet L. Evans, PE |
| Title: | Title:    Vice President |
| Date Signed: | Date Signed: |

Federal Employer  ID  # (Corporation) _____

| Address for DB Contractor's receipt of notices: | Address for Engineer's receipt of notices: 7967 Office Park Blvd. Baton Rouge, LA   70809 |
|---|---|

| Designated Representative (Paragraph 8.12): Name: | Designated Representative (Paragraph 8.12): Name: Janet L. Evans |
|---|---|
| Title: | Title:    Vice President |
| Phone Number: | Phone Number:    (225) 218-9440 |
| E-Mail Address: | E-Mail Address:    Jan.evans@volkert.com |

# ATTACHMENT A

## SCOPE OF WORK

Services for this Project shall consist of Design services including

- Road Design
- Bridge Design
- Drainage
- Electrical, Lighting Design
- Geotechnical Coordination

Plan submittals shall be as presented in Attachment B and shall be submitted in accordance with the approved schedule.

Construction Support services shall be provided as needed during the construction. Construction Engineering Services will include review of shop drawings and rebar schedules, meetings, field visits and review of geotechnical results

# ATTACHMENT B

## COMPENSATION

Monthly Billings will be based on % of progress of the below Plan Development Phases.

| | |
|---|---|
| 30% plans | $270,000 Lump Sum |
| 60% Plans | $270,000 Lump Sum |
| 90% Plans | $270,000 Lump Sum |
| Final Plans | $90,000 Lump Sum |

Construction Engineering Services will include review of shop drawings and rebar schedules, meetings, field visits and review of geotechnical results.
Construction Engineering will be billed in relation to the labor expended during construction.

Construction Engineering Services      $600,000 Lump Sum

Total Fee      $1,500,000